Case number 23-5169, Dorian Van Horn appellant v. Carlos Del Toro in his official capacity as Secretary, U.S. Department of the Navy. Mr. Erickson for the appellant, Ms. Gerdeman for the appellate. Good morning, counsel. Good morning, your honors. May it please the court, Neil Henriksen on behalf of Dorian Van Horn. Your honors, this is an age discrimination case for a seasoned federal law enforcement employee that revolves around force transfers at the Naval Criminal Investigative Service. The district court in its ruling, in particular, at Joint Appendix 961-962, but throughout, established a standard that this court had in 2022 in the really had done away with in terms of having an objective, tangible employment action at issue. And the Supreme Court just three weeks ago, and we did not update the court on this, but have become aware, Muldrow v. City of St. Louis, 1445, Supreme Court 967, April 17, 2024. In essence, really, in consistent with this court's ruling in Chambers v. District of Columbia, says that, especially under Title VII's terms, conditions, privileges of employment language and eradicating discrimination, that there doesn't have to be this tangible effect where there's a transfer at issue. And in this case, it is all about transfer. The district court's opinion even cite our en banc decision at Chambers? Does not. And in fact, Your Honor, the district court cited district court opinions and other opinions that predate Chambers and relies on Brown v. Brody, which was overturned by... So it did not cite the en banc decision from within the past two years that directly controls, that it instead repeatedly cited pre-Chambers precedents that were overruled by Chambers. That's correct, Your Honor. So, I wonder whether we shouldn't just vacate the decision, which I think you would like, then remand for the district court to buy Chambers? Well, I think that's something that the court could do, but certainly, and the court has had this record for many years. It dealt with a motion for judgment and in the alternative summary judgment years ago in this matter, denying in part. But the court really did not focus, really, and again, we think the court could reverse and remand and set it for trial, have the district court set for trial. Do you know how long the summary judgment motion was fully not quite a year, but I know, for instance, in the opposition by plaintiff, we do cite Chambers v. District Court. Oh, no, I know that. Yeah. I'm just wondering. Yeah. How speedy it went along or how not speedy. Yeah, this case was, because of the pandemic also, was slowed down in the briefing schedules from the very start in the case. And that's really, in many ways, dispositive because there's, we think, viewing the facts in a light most favorable to Ms. Van Horn taking all inferences in her favor. There are abundance of facts that there were negative consequences related to these forced transfers that were in violation of NCIS's own procedures and regulations in terms of how do you select out a officer for transfer? And in particular, we go through that in the brief. But that very first transfer out of the United States, and this is an officer with over 24 years of experience, was stationed at the headquarters. Their procedures and policies, uh, have a mobility exemption for someone in that position. They have to be there at least two years. That was not abided by that. There's a bidding process that that Naples Italy posting had over, uh, over five bidders. The original bidder selected by the panel, Mr Biggs, uh, eventually was, uh, selected by upper management. I want to ask you about the mobility policy. So the defendants say that the mobility policy should be read, and I'm looking at the language as it appears on J67. I think it's appears several places in the appendix, um, that if she had been in in headquarters for more than two years, kind of in a previous assignment, then the mobility policy exemption does not apply. What's your response to that? Our response is that the new her position was a GS 13. Originally, that position is abolished, and, uh, special agent Van Horn has moved into a supervisory position. Uh, in February of 2000 and 11 is there for 10, you know, 10 months and at J fought 4 54. And you're on his right. Of course, there's various copies of this policy, some of which are extraordinarily hard to read in this. And so J A 4 54 has the mobility policy at 13.21 C, which is the exemptions for the mobility policy. So, uh, Van Horn had moved into a supervisory role and did serve for less than two years in that position. In addition, 13. She is there evidence in the record that this was her first supervisory assignment. She had other types of supervisory assignments, but this was a distinct one. It moved from a GS 13 level to a GS 14 and a GS 14 and 15 were seen as executive service, so to speak. That's not what they called them within and C I s. And so, uh, and it's not only that exemption over the two years. It's the, uh, the way the bidding takes place in the way the bidding is required for these positions under Chapter 13.16 C two at J A 4 64. And in that setting, it is only after a they get no bidders for a particular posting, and they then can move to force transfer. Now that's not mandatory, because if they're exceptional, extraordinary circumstances that might require someone, my client knows that because she is transferred many times in the course of her a little over 24 years with NCIS and knew that was a requirement of the job. But there's certain ground rules that all employees, uh, expected, and that management had an obligation to incur. And also, importantly, we're dealing with 6 33 A of the A. D. A. Which has as Babs versus will Wilkie makes clear that any personnel decisions be made free from any discrimination. And that in in Babs versus Wilkie and the opinion in that case by the Supreme Court recognized that is extraordinary, extraordinary protections. Now, uh, in this case, the district court did not treat the decision making as needing to be free from, uh, any kind of taint of age. And it clearly was in this facts again in a light most favorable to the Miss Van Horn. Can I ask you another question? Your complaint requests front pay. Am I correct about that? It requested at a time when, uh, years ago, when this was originally had had been filed at this point, um, there would be a different type of relief. So we're not at this point seeking. We're seeking. The years have gone by, so it's merrily back pay. There is a special type of position that a retired N. C. I. S. Experienced agent could take on at N. C. I. S. That really goes outside this record. But where there are opportunities for pay, uh, that could come up. I'm not understanding what you mean when you say circumstances have we? We are. We at this case, we're requesting front pay in that Van Horn shouldn't have retired when she did. The years have gone by where she had to retire at age 57. More than seven years has gone by since dependency of this matter. Okay, I understand that. I'm just trying to nail this down. Um, because in a situation like this, where someone is is terminated or they're forced into retirement and they alleged that that was wrongful, even if they can't be reinstated, the typical equitable relief is front pay, where the court tries to envision what they would have earned if they hadn't have been wrongfully terminated or, of course, fully forced to retire. I'm just trying to understand. Is that something that you are seeking in this case? We have always been seeking it. We seek it now in a little less traditional version of what you're saying because of the age 57 mandatory retirement. She was 50 years old, approximately when these adverse actions. Obviously, you can't get front pay past age 57. Yes, maybe because there's a certain type of position that could be, uh, taken by the officer. Thank you. I see my thoughts. Okay, we'll give you a little bit of time for rebuttal. Uh, I had two minutes. You're on. Well, yeah, we'll give you some time. Thank you. Miss Kerman. Good morning. May it please the court. Deidre Seibel Kerman for secretary of the Navy. The Naval Criminal Investigative Service has a global mission, and to this end, it employs approximately 1100 special agents across the globe and approximately 130 offices globally, consistent with its mobility policy and mobility agreements that special agents signed upon entry with N. C. I. S. This is exactly what happened when the N. C. I. S. Selected Miss Van Horn to serve in enables Italy position in 2012. Following her refusal to report to Naples, Italy and her intent to retire come September 2012 when she had not retired, the agency had no other place to put her. But the only G. S. 14 validated fill it available, which was in Great Lakes. There was no constructive discharge. Should the court agree? Miss Van Horn is left with no other remedy. You don't. You don't take issue with the notion that the district courts adverse action rationale doesn't stand up in the wake of chambers and Muldrow. That's correct, Your Honor. We're not disputing that Miss Van Horn has viable claims here. That said, we take no position as to the court's underlying decision. What would you would in terms of like suggesting that there was error or anything to that to that point. But we do not dispute that she has viable causes of action in that under the A. D. A. There were personal personnel actions that occurred. So if if we thought that if we were to agree with you on that, are there grounds that you're asserting on appeal for affirmance that our grounds that the we briefed everything that we presented to you today that the district court reached? No, Your Honor. Okay. I'm not to my knowledge. Um, and I believe, um, the, uh, suggestion that Judge Walker had asked with my friend on the other side as to the time that, um, the facts were actually briefed in the court, rendered a decision was approximately October 2022 fully briefed, and then the court rendered a decision in June 2023. Um, all that said, though, the government submits to you that we are. We have put in the briefs legitimate, non discriminatory reasons, and there's no suggestion of pretext, um, such that this court could rule de novo in the sake of judicial economy in favor of the government on the reason we submitted. I'd like to ask you about that. Um, the mobility policy. Um, I don't know if you can get it in front of you. I'm looking at J 67. Um, I'm sorry. Which number are you at? Um, J 67. The exemptions from the mobility policy and just looking at the first one at one a, um, the first time supervisor in their first year of a conus assignment and conus means within the continental United States, right? That's correct, Your Honor. So let's suppose you have someone who joins in C. I. S. Their first assignment is in Boston, and they served there for five years in a couple of different assignments, and then they become a supervisor for the first time, and that's their third assignment. And that assignment is also in Boston, so they don't move. Um, but six months in that assignment, um, they're told you have to transfer to neighbors, and they say, I don't want to transfer. Um, and I should have an exemption under one A. Do they have the exemption? Um, if I might just ask, I'm sorry. How long under your hypothetical was the person in the supervisory role? Six months. Okay, thank you, Your Honor. Um, I I will admit to you that this policy does not suggest that there's a time limit by which the person was serving as a supervisor before they could be relocated. Um, I think it would likely be that this person would have an on that person, however, to submit a request for reconsideration of that selected transfer and note the exemption. Um, I will say, Your Honor, the reason the reason that it would appear that they have the exemption is because it's written, um, to be basically focused on not just the location. It's not location specific, but it's assignment specific. That's specific, serving in a headquarters assignment for less than two years. And what difference does it make if they've had five headquarters assignments previously? This is a new assignment, and if they're less than two years into this assignment, then they get the exemption. Why isn't that a reasonable reading of this policy? Your Honor, I think it's an unreasonable rating because headquarters is modifying assignment, suggesting that anyone that is serving in a headquarters assignment for less than two years collectively, not somebody who was recently promoted assignments are assignments. It doesn't say assignments. It says in a headquarters assignment, and it's different than D, which says employees assigned to the CRFO. And that's the contingency response field office in Glencoe, Georgia, right? I believe so. I believe that's correct, Your Honor. So they could have said if you were assigned to headquarters, you get an exemption, or could have made it completely location specific, but it's not. I mean, isn't this a jury question of whether or not this is pretext, whether or not there was a violation of policy? I mean, that's what we have juries for. When the defendant says, oh, we were following policy. That's why we terminated this person. That's why we took the employment action. And then if the plaintiff raises an issue of like, well, the policy is ambiguous or I didn't really violate the policy where you're not consistent with how you enforce the policy, we let juries decide those. So, Your Honor, I would respectfully submitted. It is not a question for the fact finder on these facts. There is no inconsistency in the record in terms of how NCIS apply this particular policy. My second response would be that headquarters is modifying assignment, which is basically akin to D, where it states that employees are assigned to the CRFO. There's not much like... CONUS modifies assignment in A, and OCONUS, which means outside the continental United States, modifies assignment in B, right? That's correct. If you had the situation in B, where let's suppose somebody joins NCIS and they're in Naples for their first assignment, and they're in Naples for their second assignment, and then they became become a supervisor for the first time in their third assignment, and six months in to their first time supervisory assignment also in Naples, they're told, okay, we want to transfer you to Iraq. And they say, I don't want to go. Under B, does that Well, there's a couple of differences between B and C, as well as A and C, and that is A and B are talking about... But to answer my question, under B, in that hypo, does the person have the exemption? As long as they are first-time supervisor within the first two years of their outside the United States assignment. So in this hypo that I gave you, what is the answer, yes or no? If you don't mind repeating the hypo, Your Honor, because I'm forgetting in terms of the application So they've had two prior assignments in Naples lasting five years, and then in their third assignment, which is their first supervisory assignment also in Naples, six months into that supervisory assignment, they're told you have to transfer to Iraq. I think the exemption would likely apply, yes, Your Honor. I will note that the exemptions from the mobility policy are permissive, meaning that, you know, it says personnel should not expect, but when strike, but it gives the option to the service to strike the proper balance of mission, needs, fairness, personal goals, and absent extraordinary circumstances. I would submit that the facts at issue here, though, are very different. Ms. Van Horn had been in a headquarters assignment in headquarters since 2002. She had been in a supervisory criminal investigate... I'm sorry, supervisory special agent position since 2005, over seven years. But the evidence is undisputed that she was in her current assignment at headquarters for less than two years when she was faced with a forced transfer. Respectfully, Your Honor, I know that is not what the facts suggest. She had been in a headquarters assignment because she was assigned to headquarters in 2002 when she moved from L.A. to Washington, D.C. It's not the same assignment, right? She was serving within the Threat Management Unit, the assignment, for over 10 years. So, Your Honor, I would suggest that what Apollon is suggesting here is that... You're saying that at the point, because the assignments change every few years. So, you're telling me that there wasn't a new assignment... I can't remember the dates from the briefing... less than two years before the transfer at issue. She had received a GS-14 in 2011, but her position as a supervisory special agent had not changed. That was the position that she had since 2005, and she was assigned to the Threat Management Unit since 2002. So, what we are submitting to you, and respectfully, Your Honor, that she had been assigned or had been in a headquarters assignment since 2002. Go ahead. I have one question about the transfer. I was going to switch subjects. The part of the district court's rationale as to two of the possible transfers to Naples and to Great Lakes, I think, was that those don't matter because they never came to fruition. Correct, Your Honor. I take it that you're not defending that part of the district court's rationale. That's correct, Your Honor. We would submit, though, that there were legitimate non-discriminatory reasons and no pretext for those transfers, one of which was temporary, but we are not disputing that those would be actionable under the ADA. Even though they didn't come to fruition? That's correct, Your Honor. Okay. Can you pull up JA 747, please? Yes, Your Honor. So, this is a deposition of Eileen Hogan, who I believe is a naval official. Correct. And at the bottom, I'm looking at line 17, where the question began at line 8. And the question was, when the decisions were made in early January 2012, were made for the early January 2012 involuntary transfer of Ms. Van Horn to Naples, Italy, NCIS was aware Ms. Van Horn had had less than a year of supervisory experience. Is that right? There's objections. And then the answer is she had been in that assignment for less than a year. That is what the deposition states as it relates to the position she had been in in January 2012. If I could submit to you, though, that the SF-50s that are at JA 560 show her 2002 on 559. On 560, she was assigned to, she was in the same position, the Naval Criminal Investigative Service and the Crimes Against Persons 23B. And on 560, she was assigned from a criminal investigator to a supervisory criminal investigator. And then on 561, in 2011, she had received a GS-13-9, which she was moved to a 14-5, if you see in 18 and 19. So that question is referring to the fact that she had received a GS-14 on 227, 2011. Okay, I'll take your answer. But the question that was posed to the witness was, when did the assignment begin? And the witness said that she'd been in the assignment for less than a year. You do agree with that? I do agree that Mr. Hogan, in that particular question, had stated that she had been in that assignment for less than a year. But that was in conjunction with the question being asked, what position she was in as of January 2012. All right, thank you. Thank you. I have one quick question. Yes. The validity of each subsequent action and transfer depend heavily on whether the initial transfer to Naples was proper. That's correct, Your Honor. And one more thing, if I might just correct the record, my friend on the other side had said that there was a reason, I'm sorry, that the position had to be re-advertised prior to making a selected transfer. That provision was amended in 2011 and was no longer in effect at the time that she was selected for the transfer. That can be found at JA-475. Thank you, counsel. Thank you, Your Honors. Mr. Hendrickson, we'll give you the two minutes that you'd asked for. Thank you, Your Honor. With regard to the Judge Wilkins' question to counsel, at 561, Joint Appendix 561, the effective date of the position Van Horn was in, beginning in February of 2011 until the forced transfer date, approximately January 5th, 2012, is set forth in that personnel action. And it's also found more of an explanation of it, and Your Honor had cited the testimony of Mr. Hogan, but there's also at JA-641, paragraph 6 of the declaration of Ms. Van Horn, effective in 2011, I was promoted by NCIS from a GS-13 supervisory agent into a new billet as a GS-14 divisions chief stationed in headquarters of NCIS. There's that testimony, there's the personnel action at JA-561, and there's the testimony, Your Honor, raised with regard to that. Well, the government says that at 561, it says promotion as far as nature of action, you know, and that at the top there, that box number 5B, I think it is. Whereas, if you look at 560, the personnel action in box 5B says reassignment. That was in 2005. So, I think that your friend on the other side's argument is that this was not a new assignment, it was a promotion, but not a new assignment within the meaning of the mobility policy. Right, and Your Honor had referenced that JA, I think 67, I had 454, that policy exception C, employees serving in a headquarters assignment for less than two years, and viewing, again, viewing the facts in a light most favorable to Ms. Van Horn, drawing all inferences, is that that was a new assignment. The prior assignment had been abolished. That was no longer a position, that was no longer an assignment, Your Honor. All right. Thank you. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. Take this case under submission.
judges: Srinivasan, Wilkins, Walker